RODGERS, Justice:
The appellant, Nolan Ray Williamson, was indicted on a charge of burglary in the Circuit Court of Washington County, Mississippi. He was tried, convicted and sentenced to serve a term of five years in the state penitentiary and has appealed to this Court.
A resume of the testimony in the trial court shows in substance the following facts. W. C. Logan, a Mississippi Highway Patrolman, was informed that a U-Haul truck was disabled on Highway 1. He drove to the place where the truck was located sometime after 1:00 p. m., Sunday, May 10, 1970. He found no one there, but being informed that the driver had gone to a service station to obtain tires, he left. As he drove away from the scene, he recalled a warning bulletin that he had been given about U-Haul trucks being used to transport stolen property. He decided to return to the truck. When he reached the truck he discovered that new tires had been placed on the truck and that the driver was in the process of moving the truck. He observed that the load in the truck was so heavy that the front end of the truck reared up and the tires began to smoke because the body was rubbing on the tires. The patrolman asked to see the driver’s license and was given a Georgia driver’s license issued to one Earl Robinson. The driver said that he did not know what he was hauling in the truck, but he usually hauled furniture. The patrolman left again but learned that the driver’s license was not valid so he returned to the truck and discovered that the driver had left the truck. The patrolman noticed that there was liquid leaking out of the truck so he radioed for a Highway Patrol investigator. One of the patrolmen found the driver and arrested him and put him in jail under a charge of driving with improper driver’s license. Since the truck was protruding out over the paved portion of the highway, the officers considered it necessary to move the vehicle from the highway, but, in order to do so, it was necessary to unload a part of the truckload. Another truck was obtained and a part of the load was transferred to the other truck. Both trucks were then taken to the courthouse at Rosedale, Mississippi. During all of the foregoing procedure, the officers did not have any information that a crime had been committed other than the fact that the driver was operating the vehicle with a void driver’s license.
The next day another officer made an examination of the contents of the truck and an inventory was made of the truckload and other articles found in the truck. A bolt cutter, a crowbar, a pistol and various articles of clothing were discovered. At this time the officers learned, by calling the chemical company whose name appeared on the chemicals, that the chemicals found in the truck were similar to chemicals burglarized on May 10, 1970, from Thompson-Hayward Chemical Company located in Greenville, Mississippi. The Highway Patrol investigator sent the bolt cutter, some of the merchandise and a picture of the truck to the Mississippi State Crime Laboratory.
A witness from the crime laboratory testified that he made an examination of the cut chain links from the fence of Thompson-Hayward Chemical Company and the bolt cutter. He testified that his examination revealed that the chain link was cut with the bolt cutter found in the U-Haul truck.
The driver of the truck confessed and implicated the appellant. Pictures of the appellant were shown to service station attendants at the place where the U-Haul truck was rented and appellant was identified by them as being the person with the driver at the time the U-Haul truck was rented.
*636 There were other witnesses who testified about seeing the appellant with the driver of the truck. Others testified as to the evidence of breaking and entering the building at the Thompson-Hayward Chemical Company. The foregoing narrative of testimony will be sufficient to bring into focus the issues necessary to determine on this appeal.
The appellant contends that the search of the U-Haul truck on the highway and at the courthouse at Rosedale was in violation of his constitutional rights and the testimony with reference to both searches should not have been given to the jury; that since the search of the U-Haul truck was illegal, evidence with reference to the bolt cutter and other property seized by the officers in the search was inadmissible; and that the testimony of the service station attendants with reference to identification of the appellant from pictures shown them by police was prejudicial and their testimony was inadmissible as evidence before the jury.
We are of the opinion and so hold that there was no attendant reversible error as related to the identification of the appellant from pictures shown to witnesses by the police. From the record it is difficult, if not impossible, to determine exactly how many pictures were displayed to the witnesses by the police. Even so, it has been held in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), “* * that each case must be considered on its own facts, * * and that a conviction will be set aside on this ground “only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidenti-fication.”
In applying the above standard the “totality of surrounding circumstances” test is often used. See: Redden v. State, 269 A.2d 227 (Del.1970); United States v. McNamara, 422 F.2d 499 (1st Cir. 1970); Smith v. State, 6 Md.App. 59, 250 A.2d 285 (1969).
Under this test, then, the record discloses that, although the circumstances surrounding the identification process may be questionable, nevertheless they leave little room for doubt as to the absence of any reversible error in that appellant was not denied due process of law.
We disagree with the contention that the unloading and transfer of the U-Haul truck from the highway to the courthouse was an illegal search of the U-Haul truck.
Section 8216 Mississippi Code 1942 Annotated (1956) requires an officer to remove a vehicle from the highway when it is a danger to the traveling public. The pertinent part of this section is in the following language:
(a) Whenever any police officer finds a vehicle standing upon a highway in violation of any of the foregoing provisions of this article such officer is hereby authorized to move such vehicle, or require the driver or other person in charge of the vehicle to move the same, to a position off the paved or improved or main traveled part of such highway.
(b) Whenever any police officer finds a vehicle unattended upon any bridge or causeway or in any tunnel where such vehicle constitutes an obstruction to traffic, such officer is hereby authorized to provide for the removal of such vehicle to the nearest garage or other place of safety.
The driver of the truck had been arrested and, of course, he could not move it. Moreover, the truck was so heavily loaded that it had to be partially unloaded to move it. At the time the officers moved the truck they did not search the truck, nor did they seize any of the contents of the truck, and did not know that a crime had been committed. They were not investigating a crime; they were simply getting the truck *637 and its contents off the highway and to a place of safety.
The detailed second inspection of the track to inventory the contents of the track was an entirely different matter. This inspection was not made as a part of and incident to an arrest. The driver of the track had been in jail all night. Nor can it be said that the truck was being held as evidence of a crime. The officers did not then know that a crime had been committed.
In Gordon v. State, 222 So.2d 141 (Miss.1969), we permitted a search and inventory of a motor vehicle by officers to stand where it was shown that the automobile was a part of the evidence of the crime for which the arrest was made.
In Dorsey v. State, 243 So.2d 550 (Miss.1971), we held that a search of an automobile the next morning after the driver was arrested was permissible, although not incident to a lawful arrest, because the automobile was a part of the evidence of the crime for which the arrest was made. The defendants fled in a white 1961-63 Oldsmobile with a California license tag with a spot on the side which appeared to be a burned place.
In Nobles v. State, 241 So.2d 826 (Miss.1970), where the facts showed that officers were in hot pursuit of a felon known to have committed a burglary, and along the trail of the escape they found an abandoned automobile in which they could see á pistol, they were authorized to search the automobile and to give testimony in court as to what they found.
The Supreme Court of the United States has recognized that articles, including automobiles, which are a part of the evidence of a crime may be examined in the investigation of the crime for which the lawful arrest was made. See: Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970).
In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), the Supreme Court of the United States held a search reasonable where police regulations in Washington, D. C., required officers to make a list of the property in an automobile and in so doing they discovered an automobile registration card belonging to the robbery victim. The automobile had been impounded for evidence and the Court held that the search of the automobile was reasonable and the card admissible in evidence.
In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the Court held that a search of an automobile after the defendants were incarcerated was not incident to a lawful arrest and was inadmissible in evidence because the search was too remote in time or place.
The United States Supreme Court held that where state officers made a search of an automobile after the arrest and incarceration of a state prisoner, the search was illegal and inadmissible in evidence. See: Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
It will be noted that in the cases where a warrantless search of the automobile has been permitted, not incident to an arrest, the automobile itself was involved in a known crime and was a part of the evidence.
In the instant case the search of the truck the next morning after it had been moved from the highway was not incident to a lawful arrest nor was the search an emergency, nor was the truck a part of a known crime. The search of the truck divulged that a crime had been committed.
This Court has said that after an automobile has come to rest and has completed its journey it may not be searched upon the theory that an automobile may be searched upon probable cause while moving along the highway under the statute on transportation of intoxicating liquor, Section 2615 Mississippi Code 1942 Annotated (1956).
*638 In Smith v. State, 240 Miss. 738, 128 So.2d 857 (1961), this Court held that the search of an automobile after a prisoner had been arrested and incarcerated was an unlawful search. This case makes it clear that even though an automobile may be searched at the time the driver is arrested for probable cause, a search made after the arrested driver is in jail is not a search incident to a lawful arrest and a second search requires a search warrant.
In Coston v. State, 252 Miss. 257, 172 So.2d 764 (1965), we held that a search of an automobile by officers three hours after an arrest without a search warrant was illegal and evidence obtained by the search was inadmissible in the trial of the defendant.
The case which seems to be closest to the facts in the instant case is the case of Commonwealth v. Cockfield, 431 Pa. 639, 246 A.2d 381 (1968). The facts there show two searches of an automobile. The police suspected that a certain person committed arson. They learned that he drove a 1953-1954 bluish-top and gray-bodied Dodge automobile. They went to the address of the suspect. He was not at home, but they located the automobile. They looked in the trunk of the vehicle and found charred paper and a gasoline can. They took the automobile to the police station. The defendant located the automobile and took it away with the permission of the police. The defendant was later arrested and his automobile was again searched after it had been taken to the police headquarters. The gasoline can and charred paper were moved from the trunk of the automobile. The officers did not have a search warrant on either occasion when the trunk of the automobile was searched.
The Court held that neither search was contemporaneous with the arrest of the defendant and was not incident to the arrest. The Court discussed many of the late United States Supreme Court opinions and held that, although it may be reasonable to search a movable vehicle without a warrant, still this alone was not sufficient. There must be “other circumstances for instance a serious possibility that the movable vehicle may, in fact, be moved before a warrant can be obtained.” The Court found the evidence in the automobile to be inadmissible in evidence.
There is a fine resume on the subject of search of a movable vehicle after an arrest reported in 19 A.L.R.3d at page 727 (1968).
The cases above referred to lead us to the inescapable conclusion that the search of the truck by the state highway patrol the next morning after it had been moved to the courthouse was an illegal search and that the evidence obtained by this search was inadmissible.
The evidence given by the State Crime Laboratory agent as to an examination of the wire cutters was inadmissible upon the trial of the defendant.
We think the defendant has standing to object to this evidence. See: Cotton v. United States, 371 F.2d 385 (9th Cir. 1967); Weed v. United States, 340 F.2d 827 (10th Cir. 1965); Commonwealth v. Mayfield, 394 S.W.2d 914 (Ky.1965) ; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). This does not hold true, however, when a trespasser is in possession of a stolen automobile. Slyter v. State, 246 Miss. 402, 149 So.2d 489 (1963).
The judgment of the trial court is, therefore, reversed and the case is remanded for a new trial.
Reversed and remanded.
ETHRIDGE, C. J., and BRADY, PATTERSON and SMITH, JJ., concur.